UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Joseph C. Beaudet,

                            Plaintiff,

      v.

Commissioner of Social Security,

                            Defendant.

**Decision and Order**

19-CV-387 HBS
(Consent)

---

## I.  INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 4, pages hereafter cited in brackets), and familiarity is presumed.  This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 6, 10.)  In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act.  The Court has deemed the motions submitted on papers under Rule 78(b).

## II.  DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry.  We must first decide whether HHS applied the correct legal principles in making the determination.  We must then decide whether the determination is supported by substantial evidence."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  Substantial evidence is defined as "'more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other

2

kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e).

3

The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Of the various issues that plaintiff has raised, the one that draws the Court's immediate attention concerns the ALJ's treatment of a non-examining psychiatric consultant, Dr. D. Bruno, Psy.D. The ALJ found that plaintiff had one severe impairment, really a group of related severe impairments: "gouty arthritis of multiple sites including shoulders, elbows, wrists, hands, knees, ankles and feet." [26.] After finding that plaintiff met no medical listings, the ALJ concluded that plaintiff had the RFC for sedentary work with a number of exertional and non-exertional limitations. [29–30.] The ALJ decided that plaintiff's mental impairments of depression and anxiety with panic attacks did not constitute a severe impairment. In making that decision, the ALJ gave "great weight to Dr. Bruno's opinion that the claimant's psychiatric impairment is non-severe." [35.] Dr. Bruno had no direct contact with plaintiff; the only indirect contact consisted of reviewing the medical records available as of January 19, 2016 as part of the initial Disability Determination Explanation. [103–04.] Plaintiff now objects that "[t]he ALJ then assigned 'great weight' to the nonexamining opinion of Dr. Bruno who opined Plaintiff's psychiatric impairments are non-severe. (Tr. 31). Dr. Bruno has never actually even met Plaintiff or been in the same room with him." (Dkt. No. 6-1 at 15.) The Commissioner responds by trying to put the ALJ's assessment of Dr. Bruno in context. The Commissioner notes that the ALJ gave only partial weight to Dr. Bruno's opinion that plaintiff "had no limitations with activities of daily living; no limitations with social functioning; no limitations with concentration, persistence or pace and no episodes of decompensation." [28–29.] The ALJ gave great weight only to Dr. Bruno's opinion that plaintiff's psychiatric impairments were not severe. "The ALJ then included more limitations in the RFC finding than Dr. Bruno suggested to account for his non-severe mental impairment. Particularly, the

4

ALJ limited Plaintiff to only simple, routine, repetitive tasks in a low stress environment and to work involving no more than frequent contact with supervisors and occasional contact with co-workers and the public (R.26). Contrary to Plaintiff's argument, it was not inconsistent for the ALJ to grant weight to Dr. Bruno's opinion that Plaintiff did not have a severe mental impairment because of its consistency with the record as a whole while concluding that later-received evidence supported some psychological limitations contrary to Dr. Bruno's assessment of not even mild limitations (R.31, 99-100)." (Dkt. No. 10-1 at 24.)

Plaintiff has the better argument. Non-examining psychiatric consultants are not permitted to receive great weight in a disability determination, especially where they could wind up overriding other treatment sources in the record. *See Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted); *Velazquez v. Barnhart*, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) ("In the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient."); *Minsky v. Apfel*, 65 F. Supp. 2d 124, 139 (E.D.N.Y. 1999) (citations omitted). The Second Circuit revisited this principle just last year, expressing disapproval with great weight given to single psychiatric examinations and not just non-examining reviewers. "We have frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination. This concern is even more pronounced in the context of mental illness where, as discussed above, a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. May 29, 2019) (citation omitted). Here, the ALJ effectively gave a non-examining reviewer more weight than clinical notes from 2015 that mentioned referrals to psychiatry and recommendations for cognitive behavioral therapy. [327.] Additionally, the ALJ has not

5

adequately explained an apparent inconsistency in the weight assigned to Dr. Bruno and to a consultative psychiatric examiner, Gregory Fabiano, Ph.D., who actually examined plaintiff. [343.] Dr. Fabiano provided a medical source statement in which he opined that plaintiff had no limitations with respect to simple directions and simple tasks but had mild-to-moderate limitations in dealing with others and dealing with stress. [346.] The ALJ gave Dr. Fabiano's opinion little weight solely "because he saw the claimant specifically for a one-time psychiatric evaluation." [35.] That same logic would appear to apply even more strongly to a consultant who never saw plaintiff at all.

In ordering remand, the Court takes no position as to whether any aspect of plaintiff's mental health ought to be considered a severe impairment. Considering the ALJ's comment that Dr. Bruno did not have an opportunity to "review later acquired medical evidence" [35], an updated consultative opinion might be necessary but will be left to the Commissioner's discretion. The Court also takes no position as to any of the other issues that the parties have raised. Upon remand, the Commissioner is free to revisit those issues as might be appropriate.

### III.  CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 10). The Court grants plaintiff's cross-motion (Dkt. No. 6) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                            __/s Hugh B. Scott_____
                                            Hon. Hugh B. Scott
                                            United States Magistrate Judge

DATED: June 9, 2020